O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER KAO, an individual,<br><br>            Plaintiff,<br><br>    v.<br><br>SNOW MONSTER INC., a California Corporation; CAFÉ DE PARIS, INC., a California corporation; HEEKTEA, a business entity unknown; CINDY CAI, an individual; and DOES 1-10, inclusive,<br><br>            Defendants. | CV 17-08934-RSWL-GJSx<br><br>**ORDER re: Defendant Snow Monster Inc.'s Motion for Summary Judgment of Noninfringement** [45] |

    Currently before the Court is Defendant Snow Monster Inc.'s ("Defendant") Motion for Summary Judgment of Noninfringement ("Motion") [45]. Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS:** the Court **DENIES** Defendant's Motion.

**I. BACKGROUND**

**A.    Factual Background**

Plaintiff Peter Kao ("Plaintiff") brings this Action for damages and injunction for design patent infringement against Defendants Snow Monster Inc.; Café de Paris, Inc.; Heektea; Cindy Cai; and Does 1 through 10.  Compl., ECF No. 1.  Defendant Snow Monster Inc. ("Defendant") is the only remaining defendant in this Action.[1]

Plaintiff is an individual residing in Los Angeles, California.  Def.'s Statement of Uncontroverted Facts & Conclusions of Law ("SUF") ¶ 1, ECF No. 45-4. Defendant is a California corporation.  Id. ¶ 2.  On September 30, 2008, Plaintiff was issued a design patent, United States Design Patent No. D577,601 (the "'601 Patent"), for its bottle design entitled "Juice Bottle".  Id. ¶ 3; Compl. Ex. 1, the '601 Patent, ECF No. 1-1.  The '601 Patent's single claim reads "[t]he ornamental design for juice bottle, as shown and described."  SUF ¶ 4; '601 Patent.  The '601 Patent does not claim a lid, any surface treatment, or other indicia on the claimed bottle design.  Id. ¶ 7.

Beginning around October 2006, Plaintiff began marketing and selling "Gloji" juice, packaged in a bottle that mimics the classic "A" type incandescent

---

[1] Plaintiff dismissed Defendants Café de Paris, Inc.; Cindy Cai; and Heektea on April 19, 2018 [32-33].

2

light bulb ("Gloji Bottle") and that practices and is protected by the '601 Patent. Id. ¶ 8. In or around August 2016, Defendant began marketing and offering for sale products which Plaintiff claims are "nearly identical" copies of Plaintiff's design, such as the "Light Bulb Jar" as its appears below (the "Accused Product"). Id. ¶ 11; Compl. ¶¶ 16, 21.

| Infringing Product | U.S. Design Patent No. D577,601 |
|---|---|

The Accused Product is 27 fl. oz., two to three times larger than the Gloji Bottle, which is sold in 8.5 fl. oz and 11 fl. oz versions. SUF ¶¶ 9, 16.

**B.  Procedural Background**

On December 12, 2017, Plaintiff filed his Complaint [1]. After ADR proceedings dismissing the other defendants, two extensions of the discovery cut-off date, and an extension of the motion filing deadline, Defendant filed its Motion for Summary Judgment [45] on

3

March 18, 2019. Plaintiff timely opposed [46], and Defendant timely replied [47].

## II. DISCUSSION

### A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(a) states that a "court shall grant summary judgment" when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine" issue exists if the evidence is such that a reasonable fact-finder could return a verdict for the nonmovant. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 244, 248 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the nonmovant. <u>Twentieth Century-Fox Film Corp. v. MCA, Inc.</u>, 715 F.2d 1327, 1328-29 (9th Cir. 1983). In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. <u>Anderson</u>, 477 U.S. at 255.

Where the nonmovant bears the burden of proof at trial, the movant need only prove that there is no evidence to support the nonmovant's case. <u>In re Oracle Corp. Secs. Litig.</u>, 627 F.3d 376, 387 (9th Cir. 2010). If the movant satisfies this burden, the burden then shifts to the nonmovant to produce admissible evidence showing a triable issue of fact. <u>Id.</u>; <u>Nissan Fire &</u>

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000); see also Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

**B. Analysis**

    1. Design Patent Infringement

A design patent may issue to the inventor of "any new, original and ornamental design." 35 U.S.C. § 171. Infringement of a design patent is evaluated in a two-step process. "First, the court must construe the claims of the design patent to determine their meaning and scope." Arminak and Assocs., Inc. v. Saint-Gobain Calmar, Inc., 501 F.3d 1314, 1319 (Fed. Cir. 2007) (citing OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1404-05 (Fed. Cir. 1997)). The Court then applies the ordinary observer test, which asks whether "the accused design could not reasonably be viewed as so similar to the claimed design that a purchaser familiar with the prior art would be deceived by the similarity between the claimed and accused designs, 'inducing him to purchase one supposing it to be the other.'" Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 683 (Fed. Cir. 2008) (quoting Gorham Co. v. White, 81 U.S. 511, 528 (1871)).

        a. *Claim Construction*

"Design patents are typically claimed as shown in drawings, and claim construction must be adapted to pictorial setting." Crocs, Inc. v. Int'l Trad Comm'n,

598 F.3d 1294, 1302 (Fed. Cir. 2010). "As a rule, the illustration in the drawing views is its own best description." <u>Crocs</u>, 598 F.3d at 1303 (citation omitted). The Federal Circuit instructs the district courts to defer to figures for claim construction of a design patent. <u>Egyptian Goddess</u>, 543 F.3d at 679. Here, the '601 Patent's sole claim recites "[t]he ornamental design for juice bottle, as shown and described." '601 Patent at 1. Because "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design," <u>Egyptian Goddess</u>, 543 F.3d at 679, the Court relies on the illustrations contained in the '601 Patent as follows:

> FIG. 1: "a perspective view of a juice bottle, showing my new design;"
> FIG. 2: "a front elevational view of the invention, the rear elevational view being an identical image thereof;"
> FIG. 3: "a left-side elevational view of the invention, the right-side elevational view being an identical image thereof;"
> FIG. 4: "a top plan view of the invention; and,"
> FIG. 5: "a bottom plan view of the invention."

///
///
///
///
///
///
///



'601 Patent at 1-3.

     b.  *Ordinary Observer Test*

Determining infringement of a design patent is a question of fact. <u>Catalina Lighting, Inc. v. Lamps Plus, Inc.</u>, 295 F.3d 1277, 1287 (Fed. Cir. 2002); <u>see also</u> <u>Richardson v. Stanley Works, Inc.</u>, 597 F.3d 1288, 1295 (Fed. Cir. 2010). "[I]n conducting a design patent infringement analysis, the patented design is viewed in its entirety, as it is claimed. The ultimate question requires determining whether 'the effect of the whole design is substantially the same.'" <u>Payless Shoesource, Inc. v. Reebok Int'l Ltd.</u>, 998 F.2d 985, 990-91 (Fed. Cir. 1993) (citing <u>L.A. Gear, Inc. v. Thom McAn Shoe Co.</u>, 988 F.2d 1117, 1125 (Fed. Cir. 1993)) (quotation marks and alterations omitted). In making this comparison, the fact-finder puts itself into the place of an "ordinary observer." <u>Egyptian Goddess</u>, 543

7

F.3d at 667. The "ordinary observer" is not an expert; he is an observer "of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give." Gorham, 81 U.S. at 528; Arminak, 501 F.3d at 1324 (the "ordinary observer" is the purchaser of the item displaying the claimed design).

Here, Defendant argues that the designs of the Accused Product and the '601 Patent would be sufficiently dissimilar to the ordinary observer because (1) the proportions differ; (2) the mouth of the Accused Product is distinctly extra-wide; and (3) the '601 Patent lacks additional, distinguishing features contained in the Accused Product. The design claimed in the '610 Patent and the Accused Product are reproduced below.

### 1. *Proportions and Size of Mouth*

The Gloji Bottle is sold in 8.5 fl. oz. and 11 fl. oz. versions, while the Accused Product is a 27 fl. oz. jar. SUF ¶ 16. Defendant argues that due to its size, and the fact that the Accused Product has an elongated neck, it diverges from the '601 Patent's classic, A-type light bulb.

As a preliminary matter, Plaintiff argues that Defendant is improperly comparing the Accused Product to the Gloji Bottle, a commercial embodiment of the '601 Patent. If a patentee is able to show that there is no substantial difference between the claimed design and the purported commercial embodiment, a comparison between that embodiment and the accused design is permissible. See L.A. Gear, 988 F.2d at 1125–26 ("When the patented design and the design of the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly[.]"); Lee v. Dayton–Hudson Corp., 838 F.2d 1186, 1189 (Fed. Cir. 1988). However, the Federal Circuit has "never mandated such comparisons . . . . ". High Point Design LLC v. Buyer's Direct, Inc., 621 Fed. App'x. 632, 642 (Fed. Cir. 2015) (citing Payless, 998 F.2d at 990). As such, the Court declines to only compare the Gloji Bottle and the Accused Product and it will consider the claimed design as a whole, as well as the Gloji Bottle for purposes of proportionality.

Turning to the comparison of the size and

proportionality, the Court considers IMAGE 1 Defendant provided of the Gloji Bottle and the Accused Product (left image), as well as the comparison Plaintiff provided of the Accused Product next to the claimed design from the '601 Patent (right image), both pictured below.

**IMAGE 1**



Def.'s Mot. at 12:14-27; Pl.'s Opp'n Ex. M, ECF No. 46-16.

While it is true that "[a] design patent cannot, of course, claim every conceivable shape and proportion that could arise from its basic design," Sofpool LLC v. Kmart Corp., No. CIV. S-10-3333 LKK/JFM, 2013 U.S. Dist. LEXIS 76293, at *15 (E.D. Cal. May 29, 2013), the Court must keep in mind that the ultimate goal of the design patent is to prevent the "unauthorized manufacture, use, or sale of the article embodying the patented design or any colorable imitation thereof." See 35 U.S.C. § 289. If slight variances in size or proportion negated infringement, the protection

afforded by design patents would essentially be rendered useless.

Here, the '601 Patent's claimed design is the use of a classic light bulb shape as a bottle. Given the uniqueness of the shape, the Court is not convinced that Defendant has shown that Accused Product differs enough in size and proportionality so that there is no triable issue. Payless, 998 F.2d at 990-91 (citation omitted) ("[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement."); see also Crocs, 598 F.3d at 1303-04 (explaining that the focus of the infringement analysis is the "overall impression of the claimed ornamental features" rather than "small differences in isolation."). The Court finds that the same is true as to Defendant's argument that the mouth of the Accused Product is larger than the '601 Patent. Moreover, the mouth's size is functional in that its purpose is to accommodate the larger straws used for boba drinks, and a design patent infringement analysis should be construed to only the ornamentation of the product and not to the functional features. See, e.g., Sport Dimension, Inc. v. Coleman Co., Inc., 820 F.3d 1316, 1320 (Fed. Cir. 2016); OddzOn Prods., 122 F.3d at 1405 ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the

patent.").

A reasonable juror could find that an ordinary observer would conclude that the Accused Product, while slightly larger with a longer neck and a wider mouth, "emobod[ies]" a classic light bulb, "or any colorable imitation thereof." Thus, the Court finds that in looking at the design as a whole, there is a triable issue as to whether the Accused Product's overall effect of its design is substantially similar to the '601 Patent.

2. *Additional Features*

Defendant argues that the additional features of a lid, Defendant's logo, and decoration such as a cotton candy cloud and flower crown, as shown below, distinguish the Accused Product from the claimed design.




1 | Plaintiff argues that the fact that the Accused Product
2 | may be sold with these additional non-permanent
3 | features is irrelevant.  However, the infringement
4 | inquiry includes those features visible "at any time
5 | during the 'normal use' lifetime of the accused
6 | product." Int'l Seaway Trading Corp. v. Walgreens
7 | Corp., 589 F.3d 1233, 1241 (Fed. Cir. 2009).  "Normal
8 | use" extends from "the completion of manufacture or
9 | assembly until the ultimate destruction, loss, or
10 | disappearance of the article." Id. (citing Contessa
11 | Food Products, Inc. v. Conagra, Inc., 282 F.3d 1370,
12 | 1379-80 (Fed. Cir. 2002)).  Thus, the use of the logo,
13 | lid, cotton candy cloud, and flower crown all fall
14 | under the "normal use" by Defendant and are relevant to
15 | this analysis.

First, as to the lid, while it is undisputed that the '601 Patent does not include a lid, it would be apparent to an ordinary observer by looking at the claimed design that a lid is intended to screw on to the top of the light bulb shaped glass. The Accused Product's use of a lid, if anything, is a "minimal difference," that does not show the absence of a triable issue. Payless, 998 F.2d at 990-91. Further, the comparison Plaintiff provided below shows the Accused Product without a lid, just as the '601 Patent claims.

///
///



Figure A

Pl.'s Opp'n at 7:5-14.

The logo, flower crown, and cotton candy cloud, on the other hand, appear to be distinguishing features in comparison to the claimed design. However "[d]ifferences . . . must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." Ethicon Endo-Surgery v. Covidien, Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015); id. (citing Amini, 439 F.3d at 1372) ("An element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error."). The flower crown and cotton candy cloud features are optional additions, and thus there are Accused Products sold without such features. When stripped of the flower crown and cotton candy cloud, a reasonable juror could find that the overall shape and effect of the Accused Product is substantially similar to the '601 Patent's classic light bulb design. As to the use of Defendant's logo, the logo is also an addition because it is "hand sticked to the jar" by employees. Pl.'s

Separate Statement of Genuine Dispute of Fact ("SGDF") ¶ 15, ECF No. 46-1; id., Ex. Q, ECF No. 46-20. If every Accused Product was sold with the logo affixed to it, an ordinary observer might find the two designs dissimilar enough to not cause confusion when comparing the Accused Product to the Gloji Bottle. However, the Court must also compare the Accused Product to the claimed design, which does not include the Gloji logo. The Court emphasizes that a conclusion about what a reasonable juror would think in viewing the two designs is difficult to make given the factual nature of this inquiry, Amini, 439 F.3d at 1371-72, and thus finds that there is a triable issue as to whether these additional elements render the Accused Product dissimilar under the ordinary observer test.

        c. *Prior Art*

The ordinary observer must also be "aware of the great number of closely similar prior art designs" and "conversant with the prior art." Egyptian Goddess, Inc., 543 F.3d at 676. "[I]f the accused infringer elects to rely on the comparison prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer." Id. at 678. When viewing the claimed design and an accused product in light of the prior art, "the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art." Crocs, 598

F.3d at 1303 (citing <u>Egyptian Goddess</u>, 543 F.3d at 681). "If the claimed design is close to the prior art designs, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer." <u>Id.</u>

Here, Defendant argues that when viewed in the context of prior art, the disparities between the Accused Product and the '601 Patent are significant. Def.'s Mot. at 16:6-8. Defendant first argues that Plaintiff's inspiration for the '601 Patent was the "Pomwonderful," a bottle consisting of two spheres to symbolize pomegranate fruits, demonstrating that such designs are intended to be suggestive of the contents of its beverage. Def.'s Mot. at 16:9-16; <u>id.</u>, Ex. L, "Pomwonderful" image, ECF No. 45-3. Following this theme, Defendant argues that the company Orangina features a "bulbous bottom" bottle meant to recall the peel of an orange, and another product, Blood of Grapes Wine, is shaped like a human heart, recalling wine from grapes. Def.'s Mot. at 16:16-21. In line with this, Defendant argues that the '601 Patent is meant to recall a light bulb because the Gloji Bottle is "the juice that makes you glow," and that the Accused Product deviates from this theme and the look of a traditional light bulb. However, the "Pomwonderful," Orangina, and the Blood of Grapes Wine are neither prior art references nor products assuming the classic light bulb shape, and are thus irrelevant to this

16

analysis.

As another example, Defendant includes a two-page screen shot of light bulb-shaped liqueur bottles sold online by an Italy-based company, E.V.E.L.T., to further demonstrate that the Accused Product diverges from the traditional light bulb shape. Def.'s Mot. Ex. O, ECF No. 45-3. Plaintiff argues that this is an inappropriate reference because the exhibit Defendant provides is an online post written at least four years ago, lacking foundation, accuracy, and reliability. Pl.'s Opp'n at 15:15-22. Defendant failed to address this issue in its Reply. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Defendant did not provide a declaration or any form of authentication as to this webpage, and as such, the Court will not consider it as evidence. Even if the webpage were authenticated, the bottles are miniature in size, 35 ml., and support the conclusion that the Accused Product is more similar in shape to the claimed design. See Ex. O.

Finally, Defendant points to the list of references of prior art cited by the USPTO examiner. Def.'s Mot. at 16:25-17:1; id., Ex. N. Of the references listed, below are the images provided to the Court of the prior art designs—the first depicting a side by side

17

comparison to the Accused Product, and the second a sampling provided by Defendant of some of the prior art.



Pl.'s Opp'n, Ex. N, ECF No. 46-17.



Def.'s Reply 11:23-12:9, ECF No. 47.

Upon review of the images, the prior art designs depart from the traditional light bulb shape that the '601 Patent depicts. For example, the D539,146 Patent is more align with a pear shape, and while the D406,203 Patent is a traditional light bulb, it is right side up as opposed to the claimed design. Defendant also attempts to point to a Google search that there are "millions" of results showing light bulb shaped bottles, but this distracts from the analysis at hand. Def.'s Reply at 12:20-27; id., Ex. B, ECF No. 47-1. The fact that variations of the classic light bulb shape have been used in the past does not show that there is no genuine issue as to whether the Accused Product is dissimilar to the '601 Patent. Crocs, 598 F.3d at 1303 ("Even if the claimed design simply combines old features in the prior art, it may still create an overall appearance deceptively similar to the accused design. In that case, this court will uphold a finding of infringement."). Thus, the Court finds that a reasonable juror could consider the Accused Product to most closely resemble the '601 Patent in light of the prior art references.

In sum, the ordinary observer test is a question of fact and Defendant has not shown there is no genuine dispute of material fact as to design infringement. In viewing the entire design and its effect as a whole, and in light of the prior art, there remains a triable issue as to whether an ordinary observer would find the

Accused Product and the claimed design to be substantially similar. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment.

### 2. Exceptional Case

The parties also dispute whether this is an exceptional case based upon discovery conduct. Because the Court has denied Defendant's Motion for Summary Judgment, it is not appropriate at this stage to determine whether this is an exceptional case warranting attorneys' fees.

### III. CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's Motion for Summary Judgment

**IT IS SO ORDERED.**

DATED: May 16, 2019        S/ RONALD S.W. LEW

**HONORABLE RONALD S.W. LEW**
Senior U.S. District Judge