Tommy SF Wang (SBN 272409)
Annie Wong (SBN: 295289)
Angelica Victoria O. De Mesa (SBN: 313602)
WANG IP LAW GROUP, P.C.
18645 Gale Avenue, Suite 205
Industry, California 91748
Tel: 626-269-6753
Fax: 888-827-8880
Email: twang@thewangiplaw.com, awong@thewangiplaw.com,
ademesa@thewangiplaw.com

Attorneys for Plaintiff, Peter Kao

# UNITED STATES DISTRICT COURT

## CENTRAL DISCTRICT OF CALIFORNIA

| | |
|---|---|
| PETER KAO, an individual, | Case No.: 2:17-cv-08934-RSWL-GJS |
| Plaintiff, | |
| vs. | |
| | **PLAINTIFF'S TRIAL BRIEF** |
| SNOW MONSTER INC., a California Corporation; CAFE DE PARIS, Inc., a California corporation; HEEKTEA, a business entity unknown; CINDY CAI, an individual; and does 1 to 10, Inclusive, | Date:       November 5, 2019<br>Time:       9:00 a.m.<br>Place       Courtroom 6C<br>Judge:      Hon. Ronald S.W. Lew |
| Defendants. | |

//

//

//

//

//

//

//

//

1

**PLAINTIFF'S TRIAL BRIEF**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................7

II.    DEFENDANT INCORRECTLY INTERPRETS THE
       APPLICABLE CASE LAW AND PRECEDENTS ..........................7

       A.    Design Patent Infringement Depends on Whether the
             Accused Product Appears Substantially the Same to an
             Ordinary Observer as the '601 Patent in Light of the
             Prior Art.............................................................................7

       B.    Some of Defendant's Alleged Affirmative Defenses Are
             Not Actually Affirmative Defenses and Does Not
             Preclude Defendant's Liability for Unlawful
             Infringement of the '601 Patent.......................................8

III.   DEFENDANT CANNOT MEET THEIR BURDEN OF
       PROVING INVALIDTY AS AN AFFIRMATIVE
       DEFENSE...........................................................................................9

       A.    Plaintiff's '601 Patent is Not Anticipated by any of the
             Alleged Prior Art.............................................................10

       B.    Plaintiff's '601 Patent Would Not Have Been Obvious
             in View of the Alleged Prior Art.....................................11

       C.    Plaintiff's '601 Patent Was Created for an Ornamental
             Purpose and There are Alternative Designs Available
             to Achieve its Identified Function...................................13

IV.    THE ACCUSED PRODUCT SHOULD BE COMPARED
       TO THE CLAIMED DESIGN OF '601 PATENT AND NOT
       THE GLOJI BOTTLE AS A COMMERCIALIZED
       PRODUCT. .......................................................................................14

V.     OTHER FEATURES OF THE ACCUSED PRODUCT DO
       NOT DISTINGUISH IT FROM THE PATENTED DESIGN. ..............15

       A.    *Payless* Prohibits Distinguishing the Accused Product
             from The Patented Design with Unclaimed Features of
             The Former ........................................................................16

2

| | B. | Defendant's Logo on The Accused Product Should Not Be Considered *Also* Because It Is A Functional Feature | 16 |
| | C. | The Court Already Held the Mouth's Size of the Accused Product is Functional. | 18 |
| | D. | The Normal Use Doctrine is Supposed to Exclude Features from Consideration—Not Mandate Consideration of All Features Visible During Normal Use | 18 |
| VI. | | Plaintiff Is Entitled to Injunctive Relief | 19 |
| | B. | Remedies at Law Are Inadequate to Compensate for Plaintiff's Injuries. | 20 |
| | C. | The Balance of Hardships Favors an Injunctive Relief | 21 |
| | D. | The Public Interest Will Be Served by Entry of an Injunction. | 22 |
| VII. | | CONCLUSION | 22 |

**PLAINTIFF'S TRIAL BRIEF**

# TABLE OF AUTHORITIES

## Cases

185 F.3d 1259 ...................................................................................... 20

579 F.3d 1363 ...................................................................................... 20

*Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) .................. 20

*Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006) ...................................................................... 17

*Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 U.S. Dist. LEXIS 139049, at *51 (N.D. Cal. Dec. 2, 2011) ..................... 17

*ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998) ........................... 11

*Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010) ............................................ 9

*Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) ..................................................................................... 14

*Black & Decker Inc. v. Robert Bosch Tool Corp.*, 2006 WL 3446144, at *5 (N.D. Ill. Nov. 29, 2006) ........................................................ 21

*Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 821 (Fed. Cir. 1992) ...................................................................................... 8

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013) ................................................... 11

*Columbia Sportswear N. Am. v. Seirus Innovative Accessories*, 202 F. Supp. 3d 1186, 1193 (D. Or. 2016 ................................................. 17

*Contessa Food Prod., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1379–80 (Fed. Cir. 2002) .................................................................... 18, 19

*Cornucopia Products, LLC v. Dyson, Inc.*, No. CV 12-00234-PHX-NVW, 2012 U.S. Dist. LEXIS 104750, 2012 WL 3094955, at *4 (D. Ariz. July 27, 2012) ................................................................ 17

*Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed Cir. 1996) .......... 11, 12

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ........................... 20

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670-78 (Fed. Cir. 2008) ............................................................................. 8, 15, 18

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc*, 796 F.3d 1312, 1328–29 (Fed. Cir. 2015) ................................................................... 13, 14

*Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999) ..................................................................................... 10

**PLAINTIFF'S TRIAL BRIEF**

*Gorham Co. v. White*, 81 U.S. 511, 526-28, 20 L.Ed. 731 (1871) ........................... 8

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) ................. 21

*In re Carletti*, 328 F.2d 1020, 1022 (C.C.P.A. 1964) ............................................. 13

*In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982) ..................................................... 11

*In re Stevens*, 36 C.C.P.A. 1017, 173 F.2d 1015, 1016 (CCPA 1949) .................. 18

*In re Webb*, 916 F.2d 1553, 1557–58 (Fed.Cir.1990) ...................................... 18, 19

*Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed.Cir. 2009) .......................................................................... 10, 11, 19

*Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 n. 4 (9th Cir.1988) ........................................................................................................ 9

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ........................................................................................... 14, 16, 17

*Martek Biosciences Corp. v. Nutrinova Inc.*, 520 F. Supp.2d 537, 558-59 (D. Del. 2007) ........................................................................................... 21

*Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1306 (Fed. Cir. 2012) ........................... 21

*Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011) ................................. 9, 21

*Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 612-13 (D. Del. 2007) ........................................................................................................ 21

*OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) .......................................................................................................... 17

*Odetics, Inc. v. Storage Tech. Corp.*, 14 F. Supp. 2d 785, 795 (E.D. Va. 1998) .......................................................................................................... 20

*Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993) ..................................................................................................... 15, 16

*Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) .......................................................................................................... 22

*Rockport Co., Inc. v. Deer Stags, Inc.*, 65 F. Supp. 2d 189, 195 (S.D.N.Y. 1999) ........................................................................................... 17

*Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002) ............ 13, 14

*Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383-84 (Fed. Cir. 2006) .......................................................................................................... 22

*Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1197 (Fed. Cir. 1995) ..................................................................................................... 15

*Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 881 (D. Minn. 2007) ........................................................................................... 17

**PLAINTIFF'S TRIAL BRIEF**

*Unette Corp. v. Unit Pack Co., Inc.*, 785 F.2d 1026, 1028
(Fed.Cir.1986) ................................................................................ 15

*Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310-
11 (Fed. Cir. 2007) ......................................................................... 20

*Zivkovic v. S. California Edison Co.*, 302 F.3d 1080, 1088 (9th Cir.
2002) ................................................................................................ 9

## **Statutes**

15 U.S.C. § 1125 ................................................................................ 8

35 U.S.C. § 154(a)(1) ...................................................................... 20

35 U.S.C. § 282 ............................................................................... 10

35 U.S.C. § 285 ............................................................................ 7, 9

35 U.S.C. § 289 ................................................................................ 8

35 U.S.C. § 102 ............................................................................... 10

5 U.S.C. § 103 ........................................................................... 10, 11

Fed. R. Civ. P. 8 ............................................................................... 9

## **Other Authorities**

MPEP § 1504.01(c) ......................................................................... 13

**PLAINTIFF'S TRIAL BRIEF**

## I.     INTRODUCTION

This matter is a standard design patent infringement case. Plaintiff Peter Kao ("Plaintiff") is the inventor and owner of US D577,601 S ("'601 Patent"), a design patent for juice bottles designed to embody the classic A-series light bulb shape. In or around 2016, Defendant Snow Monster Inc. ("Defendant") began selling light bulb jars ("Accused Product") as one of its drink containers for their beverage offerings. Def's Mot. Summ. J. 10, ECF No. 45. Plaintiff contends that Defendant's Accused Product infringes the claim of the '601 design patent and that Defendant's infringement was willful. Compl., ECF No. 1. Plaintiff seeks damages sufficient to compensate it for Defendant's infringement as well as equitable relief. *Id.*

Defendant contends the Accused Product does not infringe '601 design patent; that the '061 design patent is invalid due to anticipation, lack of ornamentality, and obviousness; and this case qualifies as exceptional under 35 U.S.C. § 285. Answer. ECF No. 23. Defendant further asserts other defenses such as no willful infringement, limited damages, no irreparable harm, and no equitable relief. *Id.* Finally, Defendant also asserted counterclaims against Plaintiff for a declaration of non-infringement and a declaration of invalidity. *Id.*

Pursuant to Local Rule 16-10, Plaintiff respectfully submit this Trial Brief to update Plaintiff's Memorandum of Contentions of Fact and Law and address the contentions of the parties in advance of the trial scheduled to commence on November 5, 2019.

## II.    DEFENDANT INCORRECTLY INTERPRETS THE APPLICABLE CASE LAW AND PRECEDENTS

### A.     Design Patent Infringement Depends on Whether the Accused Product Appears Substantially the Same to an Ordinary Observer as the '601 Patent in Light of the Prior Art.

Defendant states that in order to prove infringement, "Plaintiff has the burden of showing that: the Accused Product infringes the '601 Patent, that is, an ordinary

7

observer familiar with the patented product would be deceived into believing that the Accused Product is the same as the '601 Patent." Def.'s Mem. of Contentions of Fact and Law 3, ECF No. 60. However, this is the incorrect reiteration of the "ordinary observer" test for determining whether a design patent has been infringed.

Case law has long established that the "ordinary observer test" is whether, in view of the prior art, the ordinary observer finds that the overall appearance of the accused design is substantially the same as the overall appearance of the claimed design. *See Gorham Co. v. White*, 81 U.S. 511, 526-28, 20 L.Ed. 731 (1871); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670-78 (Fed. Cir. 2008)(en banc); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 821 (Fed. Cir. 1992); *see also*, 35 U.S.C. § 289.

Here, Defendant's phrasing of the "ordinary observer test" incorrectly suggests that Plaintiff must show that the ordinary observer believed the Accused Product was the same as the '601 Patent and were deceived into buying the Accused Product thinking it was the '601 Patent. Unlike the Lanham Act, the design patent provisions do not refer to "deception" or "confusion." *Compare* 15 U.S.C. § 1125(a)(1)(A) (Lanham Act) with 35 U.S.C. § 289 (liability for applying to a product "the patented design, or any colorable imitation thereof"). The correct test should be based on a finding of substantial similarity between the Accused Product and the '601 Patent in view of the prior art and without needing to prove any evidence of deception. Therefore, the Court must apply the "ordinary observer test" as established in the *Egyptian Goddess, Inc.* ruling as opposed to Defendant's proposed rule statement.

### B. Some of Defendant's Alleged Affirmative Defenses Are Not Actually Affirmative Defenses and Does Not Preclude Defendant's Liability for Unlawful Infringement of the '601 Patent.

In its Answer to Plaintiff's Complaint for Damages, Defendant asserted the following affirmative defenses: Non-Infringement, Patent Invalidity, No Willful Infringement, No Equitable Relief, No Damage, No Irreparable Harm, Exceptionality

under 35 U.S.C. § 285, and limited damages. However, except for patent invalidity, all of Defendant's defenses are *not* actually affirmative defenses but rather merely provides a basis to negate an element of Plaintiff's prima facie case for relief. "A defense which demonstrates that plaintiff has not met its burden of proof as to an element plaintiff is required to prove is not an affirmative defense." *Zivkovic v. S. California Edison Co.,* 302 F.3d 1080, 1088 (9th Cir. 2002).

An affirmative defense should be a defense on which the defendant has the burden of proof. *See, e.g., Kanne v. Connecticut General Life Ins. Co*., 867 F.2d 489, 492 n. 4 (9th Cir.1988). It serves to preclude liability even if all of the elements of the Plaintiff's claim are proven. *See Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1173 (N.D. Cal. 2010) (internal citation omitted); *see* Fed. R. Civ. P. 8.

Here, it is important to clarify that Defendant's mere assertion of other purported defenses (excluding patent invalidity) will not preclude liability for Defendant's unlawful infringement of the '601 Patent. The only affirmative defense applicable in this matter is Defendant's claim that the '601 design patent is invalid due to anticipation, lack of ornamentality, and obviousness. Therefore, all of Defendant's other asserted "affirmative defenses" will neither limit nor excuse their civil liability in this matter and would merely serve to negate elements of Plaintiff's case.

## III. DEFENDANT CANNOT MEET THEIR BURDEN OF PROVING INVALIDTY AS AN AFFIRMATIVE DEFENSE.

An issued design patent may be found to be invalid if the design is anticipated and obvious. *See* 35 U.S.C. §§ 102 and 103. However, Plaintiff's '601 Patent enjoys a presumption of validity which can only be rebutted under the "clear and convincing" standard. *See* 35 U.S.C. § 282; *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 95 (2011). In this instance, although Defendant asserts an affirmative defense of invalidity, they neither have the evidence nor testimony to support a substantial challenge to the '601 Patent's validity and rebut the statutory presumption.

## A. Plaintiff's '601 Patent is Not Anticipated by any of the Alleged Prior Art.

As with infringement, the anticipation inquiry concerns whether, in considering the design as a whole, a single prior art design and the claimed design is substantially the same in the eye of an ordinary observer. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239-40 (Fed.Cir. 2009) (concluding that the ordinary observer test for infringement is also the test for anticipation).

Here, Defendant has failed to present any prior art reference that is "substantially the same" as the '601 patent under the ordinary observer test. As this Court explicitly stated in its Order re Defendant Snow Monster for Summary Judgement of Noninfringement,

> "Upon review of the images, the prior art designs depart from the traditional light bulb shape that the '601 patent depicts. For example, the D539,146 Patent is more align with a pear shape, and while the D406,203 Patent is a traditional light bulb, it is right side up as opposed to the claimed design."

Order re Def.'s Mot. Summ. J. 19, ECF No. 55. Although Plaintiff anticipates Defendant attempting to present other prior art images (*see, e.g.* Exhibit Nos. 156-162, Joint Exhibit List 23-25, ECF No. 63), these exhibits will be inadmissible based on objections of authenticity, hearsay, and lacking foundation.

Moreover, any evidence concerning anticipation is uncorroborated. "[C]orroboration is required of any witness whose testimony alone is asserted to invalidate a patent, regardless of his or her level of interest." *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999). Here, none of the named trial witnesses has personal knowledge or the ability to adequately lay the foundation for these prior arts references to be deemed admissible into evidence. Consequently, Defendants cannot use these prior art references to corroborate their witnesses' testimonies about any claims of anticipation. Therefore, Defendant has failed to prove invalidity based on anticipation by clear and convincing evidence.

## B. Plaintiff's '601 Patent Would Not Have Been Obvious in View of the Alleged Prior Art.

A claim is invalid for obviousness if the differences between it and the prior art are such that the claim would have been obvious to a person of ordinary skill in the art at the time of the claimed invention. *See* 35 U.S.C. § 103; *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.,* 725 F.3d 1341, 1352 (Fed. Cir. 2013). "More specifically, the inquiry is whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design." *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed Cir. 1996) (citations omitted.)

Determining whether a patent claim is obvious involves assessing: (a) the scope and content of the prior art; (b) the level of ordinary skill in the pertinent art; (c) the differences, if any, between the prior art and the claims at issue; and (d) the impact of any secondary considerations on the obviousness inquiry. *Cheese Sys.*, 725 F.3d at 1352-53. Although the obviousness analysis incorporates these underlying factual inquiries, the ultimate judgment of obviousness is a legal determination. *Id.* at 1352. Obviousness "'cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention.'" *Id.* (citing *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998)).]

To answer this inquiry, the Federal Circuit adopts a two-step process. First, "one must find a single [primary] reference, 'a something in existence, the design characteristics of which are basically the same as the claimed design.'" *Durling*, 101 F.3d at 103 (quoting *In re Rosen*, 673 F.2d 388, 391 (C.C.P.A. 1982). Second, "other references may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design." *Durling*, 101 F.3d at 103. Once the piece of prior art has been constructed, "the ordinary observer test" is used to determine whether the patent design is invalid for obviousness. *Int'l Seaway*

---

11

1 | *Trading Corp. v. Walgreens Corp.*, 589 F.3d at 1240.

2 |      With the correct overall visual impression of the '601 patent in mind, it is
3 | evident that Defendant has failed to provide a single prior art reference that can act as
4 | the primary reference. As apparent from the side-by-side comparisons, all of the prior
5 | art cited by the USPTO (*see, e.g.,* D462,611, D406,203, D539,146 et al) convey a
6 | substantially different visual impression than the '601 patent and should not be treated
7 | as a primary reference. Again, this Court has explicitly stated "[u]pon review of the
8 | images, the prior art designs depart from the traditional light bulb shape that the '601
9 | patent depicts." Order re Def.'s Mot. Summ. J. 19, ECF No. 55.

10 |      Even assuming, arguendo, that one of the prior art container could act as a
11 | primary reference for the '601 patent, a designer would <u>not</u> be motivated to combine
12 | either the container with the secondary references to arrive at a design basically the
13 | same as the '601 patent. See *Durling*, 101 F.3d at 103 (stating that "other references
14 | may be used to modify [the primary reference] to create a design that has the same
15 | overall visual appearance as the claimed design"). For example, there is no reason for
16 | an ordinary designer to modify a two-dimensional light bulb-shaped dispenser that is
17 | visually a flat and thin container with an opening at side (D462,611) to a three-
18 | dimensional light bulb-shaped container of the '601 patent that can be used to bottling
19 | liquid, such as juice.

20 |      Accordingly, Defendant has failed to meet its burden concerning obviousness.
21 | Rather than identifying specific combinations of prior art references and explaining
22 | why such combinations would render the '601 patent obvious, Defendant merely
23 | attaches several pieces of alleged prior art as exhibits and asserts that the '601 patent
24 | is obvious. Defendant provides no analysis and makes no attempt to argue that the
25 | '601 patent is substantially similar to any particular combination of prior art references
26 | under the ordinary observer test. Thus, Defendant has failed to invalidate the '601
27 | patent based on obviousness by clear and convincing evidence.

28 | //

**PLAINTIFF'S TRIAL BRIEF**

**C. Plaintiff's '601 Patent Was Created for an Ornamental Purpose and There are Alternative Designs Available to Achieve its Identified Function.**

A claimed design lacks ornamentality only if its overall appearance is dictated by function. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc*, 796 F.3d 1312, 1328–29 (Fed. Cir. 2015). Invalidity of a design patent due to functionality must be established by clear and convincing evidence as design patents can only issue for useful articles of manufacture, which necessarily have some function. *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002). In *Rosco*, the Federal Circuit reversed the trial court's finding of lack of ornamentality. Even though the claimed design to the shape of a mirror created a unique field of view, the design was not dictated by functional considerations only. *Id.* at 1378–79. The accused infringer had not shown that there are no designs that have the same general functional capabilities. *Id.* at 1379.

According to the MPEP, "[a]n ornamental feature or design has been defined as one which was 'created for the purpose of ornamenting' and cannot be the result or 'merely a by-product' of functional or mechanical considerations." MPEP § 1504.01(c) (quoting *In re Carletti*, 328 F.2d 1020, 1022 (C.C.P.A. 1964)). Evidence establishing ornamentality includes "an attempt to develop or to maintain consumer recognition of the article embodying the design" and "the motivating factors behind the creation of the design." *See id.*

Here, Plaintiff's conscious acts to create an ornamental design and adopt a design because of its ornamental features strongly indicates that the '601 Patent is not dictated by its function. Specifically, Plaintiff Peter Kao invented the '601 Patent for an ornamental purpose of looking a certain way and his thought process behind the design was that "[t]he lightbulb shape was chosen and used to communicate the word 'Glow', that the slogan for Glogi is 'The juice that makes you glow'… ." *See* Exhibit G-H to Def.'s Mot. Summ. J. 4-5, ECF No. 47-2 [Pl's Resp. to Def's First set of Interrogs. No. 1].) Hence, designing of the '601 Patent to embody the classic A-series

light bulb shape to communicate the word "glow" was the primary goal of the patent's creation as opposed to just the overall the function of creating a "juice bottle".

Furthermore, the design of the '601 patent is <u>not</u> primarily functional. A design is functional rather than ornamental if it is dictated solely by the use or function of the article. *Ethicon*, 796 F.3d at 1328 (internal quotation marks omitted); *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) (internal quotation marks omitted). In other words, a design is ornamental unless the claimed design is "the only possible form of the article that could perform its function." *Rosco*, 304 F.3d at 1378 (internal quotation marks omitted). "When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993). For that reason, "the availability of alternative designs" is "an important - if not dispositive - factor in evaluating the legal functionality of a claimed design." *Ethicon*, 796 F.3d at 1329-30.

Here, there are plenty of alternative designs for "juice bottles" and/or liquid containers in general. The '601 Patent is merely one way to design a bottle. The classic light bulb shape is not a necessary in order to hold liquid or juice. There are alternative ornamental designs that could provide the same or similar accommodation function of the claimed bottle, and the claimed bottle could still function in the same manner with a differently shape. Therefore, the ornamental design of the '601 Patent is geared towards the overall appearance of the article and proves that the design claimed in the was driven by aesthetic, not functional, considerations.

## IV.   THE ACCUSED PRODUCT SHOULD BE COMPARED TO THE CLAIMED DESIGN OF '601 PATENT AND NOT THE GLOJI BOTTLE AS A COMMERCIALIZED PRODUCT.

Plaintiff anticipates Defendant attempting to compare the Accused Product with the Gloji bottle, a commercialized product of the '601 Patent, instead of the illustrated figures and overall visual appearance of the '601 Patent for purposes of the

14

infringement analysis. However, this would be an improper analysis and the Jury cannot be allowed to base their fact-finding decision of infringement on this faulty comparison.

The Federal Circuit in *Payless* made it clear that the "[p]roper application of the *Gorham* test requires that an accused design be compared to the claimed design, not to a commercial embodiment." *Payless Shoesource, Inc. v. Reebok Int'l Ltd*., 998 F.2d 985, 990 (Fed. Cir. 1993) (citing *Unette Corp. v. Unit Pack Co., Inc.*, 785 F.2d 1026, 1028 (Fed.Cir.1986)). The Federal Circuit in *Sun Hill Indus., Inc.* also explained that although "the commercial embodiment contains all of the claimed features" of the patent, "the commercial embodiment also contains many features beyond those in the patent claim, namely color, size, and material." *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.,* 48 F.3d 1193, 1197 (Fed. Cir. 1995), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665 (Fed. Cir. 2008). Moreover, "in performing a comparison with the commercial embodiment in this case, the fact finder had the obligation to carefully confine its comparison only to the claimed features, and not to unclaimed features, of the commercial embodiment." *Id.* (citing *Payless*, 998 F.2d at 990)

Here, although the Gloji Bottle is a commercial embodiment of the '601 Patent and contains claimed features of the '601 Patent, it also has features that are <u>not</u> claimed by the '601 Patent such as its size. Therefore, in terms of the unclaimed features, the accused product should not be compared to the Gloji Bottle, which is just one of all the possible commercial embodiments of the '601 Patent. *See Payless,* 998 F.2d at 990; *Sun Hill,* 48 F.3d at 1197.

## V.     OTHER FEATURES OF THE ACCUSED PRODUCT DO NOT DISTINGUISH IT FROM THE PATENTED DESIGN.

Defendant argues that the additional features of a lid, Defendant's logo, and decoration such as a cotton candy cloud and flower crown make the accused product distinguishable from the patented design. Following the above analysis of *Payless*, it

15

is clear that these additional features should be excluded from the comparison of the accused product and the patented design since these features are unclaimed by the '601 patent. *See L.A. Gear*, 988 F.2d at 1126; *Payless*, 998 F.2d at 990.

## A. *Payless* Prohibits Distinguishing the Accused Product from The Patented Design with Unclaimed Features of The Former

As previously discussed, *Payless* prohibits distinguishing the accused products from the patented design with unclaimed features of a commercial embodiment of the patent. It also held that courts may not distinguish the two using unclaimed features of the accused products.  *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d at 990. In *Payless*, there was another accused product called Attack Force 9160, which has an orange basketball on the tongue, and the patented design did not have this feature. *Id.* The trial court held that the accused product was distinguishable from the patent because of this additional feature. *Id.* Nonetheless, the Court of Appeal held that "[n]one of those cited features, however, is part of the claimed designs and thus they may not serve as a valid basis for comparison in a design patent infringement analysis," and concluded that "the district court was improperly influenced by features extraneous to the claimed design and that its decision turned on those features." *Id.*

Here, the lid, logo, flower crown, and cotton candy as applied to the Accused Product are additional features and extraneous to the overall design of the Accused Product. Specifically, these extraneous features do not alter the overall design and aesthetic of the Accused Product which still comes across as a light-bulb shaped jar even with these added features. As the famous rhetorical expression states, these additional features would be like putting lipstick on a pig.  Hence, these additional features should be excluded from the comparison between the Accused Product and the '601 Patent in conducting the infringement analysis.

## B. Defendant's Logo on The Accused Product Should Not Be Considered *Also* Because It Is A Functional Feature

As discussed above, the logo on the accused product is a feature unclaimed by

the patent and therefore should be excluded from the comparison. Additionally, the logo is primarily used as a functional feature of the accused product. *See Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006). It should thus be excluded from the comparison of the Accused Product and the '601 design. *See OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997) ("Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design . . . .").

Moreover, "the use of a mark will not avoid infringement of an otherwise infringing product." *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2011 U.S. Dist. LEXIS 139049, at *51 (N.D. Cal. Dec. 2, 2011). *See L.A. Gear*, 988 F.2d at 1126 ("Design patent infringement. . . does not . . . allow avoidance of infringement by labeling"); *see also Columbia Sportswear N. Am. v. Seirus Innovative Accessories*, 202 F. Supp. 3d 1186, 1193 (D. Or. 2016) ("It is, however, well-settled that a defendant cannot avoid infringement by merely affixing its logo to an otherwise infringing design."); *Cornucopia Products, LLC v. Dyson, Inc.*, No. CV 12-00234-PHX-NVW, 2012 U.S. Dist. LEXIS 104750, 2012 WL 3094955, at *4 (D. Ariz. July 27, 2012) (explaining that, in applying the ordinary observer test, "labeling usually may not be considered. The company logo undoubtedly helps ordinary observers distinguish products, but design patent protection would essentially collapse if putting one's own logo on an otherwise identical product could defeat the ordinary observer test."); *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 881 (D. Minn. 2007) ("[T]he presence of a logo cannot defeat a design-infringement claim[.]"); *Rockport Co., Inc. v. Deer Stags, Inc.*, 65 F. Supp. 2d 189, 195 (S.D.N.Y. 1999) (defendant's mark was "irrelevant" to question of design patent infringement).

Therefore, the trademarked logo should be excluded from the comparison.

//

//

## C. The Court Already Held the Mouth's Size of the Accused Product is Functional.

Plaintiff anticipates Defendant raising the difference in mouth size of the Accused Product as part of its non-infringement claim. However, it is worth noting that the Court already found that "the mouth's size is functional in that its purpose is to accommodate the larger straws used for boba drinks, and a design patent infringement analysis should be construed to only the ornamentation of the product and not to the functional features." Order re Def.'s Mot. Summ. J. 11-12, ECF No. 55 (internal citations omitted). Therefore, the mouth's size should be excluded from the comparison of the patented design at issue and the accused product.

## D. The Normal Use Doctrine is Supposed to Exclude Features from Consideration—Not Mandate Consideration of All Features Visible During Normal Use.

A review of the history of the Normal Use Doctrine reveals that it has never been applied to mandate consideration of unclaimed features in infringement analysis. In 1949, the former United States Court of Customs and Patent Appeals noted that"[i]t has been held repeatedly that articles which are concealed or obscure [sic] in normal use **are not proper subjects** for design patents, since their appearance cannot be a matter of concern." *In re Stevens*, 36 C.C.P.A. 1017, 173 F.2d 1015, 1016 (CCPA 1949) (emphasis added). In 1990, the Federal Circuit construed "normal use" in the design patent prosecution context to be "a period in the article's life, beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article." *In re Webb*, 916 F.2d 1553, 1557–58 (Fed.Cir.1990). In 2002, the Federal Circuit in *Contessa* restated its decision in *In re Webb*, and acknowledged *In re Stevens's* holding. *See Contessa Food Prod., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1379–80 (Fed. Cir. 2002), *abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008).

*Contessa* is a patent infringement case involving a design patent for a shrimp

tray that claimed features on both the upside and underside of the tray. *Id. at* 1374–75. The trial court there "discounted the significance of the underside of the tray in its 'ordinary observer' analysis" because the underside was not visible at the point of sale. *Id.* at 1379. The Court of Appeal for Federal Circuit disagreed with the trial court and held that limiting "the infringement inquiry to the time of sale . . . was clear error." *Id.* The Federal Circuit then went on to restate its holding in *In re Webb* that "normal use" begins after "completion of manufacture or assembly" and ends "with the ultimate destruction, loss, or disappearance of the article." *Id.* at 1379–80. (citing *In re Webb*).

In 2009, the Federal Circuit in *Int'l Seaway Trading Corp* restated its decisions in *Contessa* and *In re Webb* regarding "normal use". *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d at 1241.  It is clear that the normal use doctrine as applied in *In re Stevens*, *In re Webb, Contessa,* and *Int'l Seaway Trading Corp* is a way to <u>exclude</u> certain features or designs from being patented or being considered in patent infringement analysis. In other words, it is not applied to include unclaimed features as part of the infringement analysis.

Additionally, applying "normal use" to mandate consideration of unclaimed features in infringement analysis is clearly inconsistent with *Payless*. *See* 998 F.2d at 990 ("[n]one of those cited features, however, is part of the claimed designs and thus they may not serve as a valid basis for comparison in a design patent infringement analysis."). Therefore, "normal use" may not be applied in this case in order to include Defendant's unclaimed features such as the lid, Defendant's logo, and decorations like a cotton candy cloud and flower crown as part of the infringement analysis.

## VI.   Plaintiff Is Entitled to Injunctive Relief

Defendant alleges in its Memorandum of Contentions of Fact and Law that Plaintiff is not entitled to Injunctive Relief. *See* Def.'s Mem. of Contentions of Fact and Law 7-9, ECF No. 60. For injunctive relief, Plaintiff has the burden of showing "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such

as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by [an injunctive relief]." *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

### A. Plaintiff has suffered irreparable injuries

Defendant's Accused Product has caused irreparable injuries to Plaintiff because Plaintiff's intellectual property rights have been violated through the reproduction of products that infringes his patented design. The essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent. *See Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1328 (Fed. Cir. 2008) (citing 35 U.S.C. § 154(a)(1)).

Here, Plaintiff's right to the exclusive use of the patented invention has been violated by the Accused Product and such a violation is an irreparable injury since Plaintiff has suffered loss of sale, market share, and opportunity to exclusively license the '601 design patent. *See, e.g., Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1310-11 (Fed. Cir. 2007) (affirming district court's grant of permanent injunction because irreparable harm included loss of sales, price erosion, and "lost opportunities to sell other services to the lost customers"); *see also Martek Biosciences Corp. v. Nutrinova Inc.*, 520 F. Supp.2d 537, 558-59 (D. Del. 2007), *aff'd in part, rev'd in part on other grounds*, 579 F.3d 1363 (Fed. Cir. 2009) (irreparable harm found where patentee is "likely to lose market share that it may not be able to recapture"). Therefore, Plaintiff is entitled to equitable relief to prevent further harm from Defendant's continued infringement.

### B. Remedies at Law Are Inadequate to Compensate for Plaintiff's Injuries.

Defendant's encroachment of Plaintiff's statutory right to the exclusive use of the '601 patent cannot be adequately compensated by monetary damage. *See Odetics, Inc. v. Storage Tech. Corp.*, 14 F. Supp. 2d 785, 795 (E.D. Va. 1998), *aff'd*, 185 F.3d

20

1259 (Fed. Cir. 1999)  ("[D]amages, however measured, are nonetheless inadequate because limiting [the patentee] to damages does not allow it to exercise the monopoly power granted to it by the statute; an injunction is the only remedy that can achieve that goal."); *Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592, 612-13 (D. Del. 2007) (noting that "statutory right to exclude represents a benefit that, under these circumstances, cannot be equated by an award of cash," where the circumstances involved infringement by competitor of the patentee's licensee).

Monetary damages are also inadequate to compensate for Plaintiff's loss of sales and market share, because the it is difficult to estimate the monetary damages for such losses. *See i4i Ltd. P'ship v. Microsoft Corp*., 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ("Difficulty in estimating monetary damages is evidence that remedies at law are inadequate.").

### C. The Balance of Hardships Favors an Injunctive Relief

Here, an injunctive relief will cause no significant hardship on Defendant's part. Defendant Snow Monster is a relatively successful business and it has many other product lines so the issuance of an injunction will have little impact on its business as a whole. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d at 862 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) (holding that useful factors in conducting the balancing of hardships include "the parties' sizes, products, and revenue sources"). It is important to note that this is not a case where the issuance of an injunction will drive the infringer out of business. *See, e.g., Black & Decker Inc. v. Robert Bosch Tool Corp*., 2006 WL 3446144, at *5 (N.D. Ill. Nov. 29, 2006).

The Federal Circuit has also noted that "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1306 (Fed. Cir. 2012). To the extent there is any harm to Defendant, it bears emphasis that Defendant could have, but failed to, mitigate the hardships it may face. Plaintiff filed the complaint on December 12th, 2017, but Defendant

**PLAINTIFF'S TRIAL BRIEF**

1    continues to sell the Accused Product.

2        In comparison, without the injunction, Plaintiff would suffer continued

3    encroachment on his patent rights. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659

4    F.3d 1142, 1156 (Fed. Cir. 2011) ("[R]equiring [Patentee] to compete against its own

5    patented invention, with the resultant harms described above, places a substantial

6    hardship on [Patentee].") Also, Plaintiff Peter Kao is only an individual inventor. *See*

7    *i4i*, 598 F.3d at 862 (holding that useful factors in conducting the balancing of

8    hardships include "the parties' sizes"). Therefore, the balance of hardships favors an

9    issuance of injunctive relief against Defendant.

10       **D. The Public Interest Will Be Served by Entry of an Injunction.**

11       An injunction here will not disserve the public interest. Defendant can always

12   buy the patented products from Plaintiff, and the public will not have extra

13   inconvenience when buying products from Defendant. Additionally, public policy

14   favors the enforcement of patent rights. When a defendant "is competing in the

15   marketplace using a competitor's patented technology," it has the detrimental effect

16   of "inhibiting innovation and incentive." *Douglas Dynamics, LLC v. Buyers Prod.*

17   *Co.,* 717 F.3d 1336, 1346 (Fed. Cir. 2013).

18       There are also no concerns of public health present which may complicate the

19   analysis. Absence of such concerns makes the public interest analysis even more in

20   favor of an injunction. *Cf. Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368,  1383-84

21   (Fed. Cir. 2006) (holding that the public's interest in protecting patents outweighed

22   the serious harms that could occur if the infringing generic drug were removed from

23   the market by a preliminary injunction). Therefore, the public interest factor also

24   weighs in favor of an injunction.

25   **VII.   CONCLUSION**

26       Plaintiff looks forward to a trial and will vindicate its intellectual property right

27   in the '601 Patent. The purpose of Patent law is to reward inventors with a limited

28   exclusive right on their invention in exchange for providing technical progress to the

public. Defendant's infringement of the '601 Patent not only contradicts that purpose but also undermines the framers of the U.S. Constitution who gave Congress the power to create a patent system right in the Constitution itself because they valued the progress of science and useful arts. As such, Defendant must respect the institution that is patent law and give credit where credit is due.

Dated: October 29, 2019                        Respectfully Submitted,

                                    By:    /s/ Tommy SF Wang
                                           Tommy SF Wang, Esq.
                                           Annie Wong, Esq.
                                           Angelica Victoria O. De Mesa, Esq.
                                           WANG IP LAW GROUP, P.C.
                                           Attorneys for Plaintiff, Peter Kao

**PLAINTIFF'S TRIAL BRIEF**

## **CERTIFICATE OF SERVICE**

In accordance with Rule 5-3 of the Local Civil Rules of the United States District Court for the Central District of California, the undersigned hereby certifies that on October 29, 2019, a true and correct copy of the foregoing document was filed through the Courts CM/ECF System and thereby caused to be served by email on all counsel of record.

<u>/s/ Angelica Victoria O. De Mesa</u>

Angelica Victoria O. De Mesa

---

1

**PLAINTIFF'S TRIAL BRIEF**